WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Davon Lynn Smith,<br><br>    Defendant. | No. 3:19-cr-00056-GMS<br><br>**ORDER** |

Pending before the Court are Defendant Davon Lynn Smith's Motion to Vacate (Doc. 466), Motion to Compel Discovery (Doc. 469), a subsequent Motion to Vacate (Doc. 481), Unopposed Motion to Permit Time for Investigation (Doc. 484), and the Government's Unopposed Motion to Supplement (Doc. 483). For the reasons provided below, each motion is denied.

## BACKGROUND

On August 3, 2021, Defendant was convicted following a jury trial of (1) possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); (2) sex trafficking a minor, in violation of 18 U.S.C. § 1591(a)(1); (3) participation in a sex trafficking venture, in violation of 18 U.S.C. § 1591(a)(2); and (4) sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(1). (Doc. 451 at 1). In December of 2021, Defendant was sentenced to concurrent terms of 22 years of imprisonment for each Count. (*Id.* at 1–2). Judge Joshua Kindred was the presiding judge during Defendant's trial and imposed his sentence. (Doc. 372). The Government was represented by Assistant United States Attorneys ("AUSAs") Jennifer Ivers and Adam Alexander. (Doc. 466 at 1).

In April 2024, on direct appeal, the Ninth Circuit upheld Defendant's convictions, but vacated Defendant's sentence as to Count 1 because it exceeded the 20-year statutory maximum, remanding for resentencing. (Doc. 451 at 5). In June 2024, the Ninth Circuit denied Defendant's petition for panel rehearing. (Doc. 452).

While Defendant's appeal was pending, the Ninth Circuit Judicial Council ("Judicial Council") investigated allegations of misconduct made against Judge Kindred. *In re Complaint of Judicial Misconduct*, No. 22-90121 (9th Cir. May 23, 2024). On May 23, 2024, the Judicial Council published a summary of its findings—including Judge Kindred's inappropriate relationships with his law clerks; inappropriate relationships with AUSAs and other local attorneys; and other unethical behavior, including drinking in chambers and failing to review dispositive orders—and recommended his resignation. (Doc. 466 at 2–7; Doc. 474 at 4–6). Judge Kindred resigned from the bench in July 2024, and Defendant was never resentenced as to Count 1. (Doc. 474 at 2, 6).

On August 22, 2025, following Judge Kindred's resignation and the publication of the Ninth Circuit Judicial Council's Order regarding his misconduct, Defendant filed a Motion to Vacate. (Doc. 466). In the motion, Defendant challenges the legality of his conviction, urging that Judge Kindred's misconduct necessitated his recusal from Defendant's trial because it created, at minimum, an appearance of partiality.[1] (*Id.* at 9–12). Defendant also asserts another ground for recusal: that Judge Kindred had a "weird," "rivalry relationship" with AUSA Alexander, who had worked with Judge Kindred at the Alaska District Attorney's Office and who was the second prosecutor in Defendant's case. (Doc. 466 at 7–12); Exhibit A, Notice of Government's Public Filing of Previously Sealed Documents at 54, *United States v. Hernandez-Zamora*, No. 3:21-cr-00062 (D. Alaska Dec. 10, 2024), ECF No. 407-1; Exhibit D-2, Motion for New Trial at 108–10, *United States v. Spayd*, No. 3:19-cr-00111 (D. Alaska June 6, 2025), ECF No. 476-3. Defendant subsequently filed a Motion to Compel Discovery, seeking "all discovery relevant to the

---

[1] Defendant alternates between assertions that Judge Kindred's misconduct created the "appearance of impropriety" and the "appearance of partiality." (*See, e.g.*, Doc. 466 at 10). Because the legal standard that Defendant cites concerns partiality—not impropriety—the court will assume that Defendant's arguments similarly concern partiality.

sudden retirement of Judge Joshua Kindred," particularly information relevant to Defendant's Motion to Vacate. (Doc. 469 at 1).

On October 20, 2025, Defendant's case was reassigned to this Court. (Doc. 475).

On December 29, 2025, Smith filed another Motion to Vacate using a motion form. (Doc. 481). The additional Motion presents identical factual grounds for the challenge to his convictions as Smith's initial Motion to Vacate. (*Compare* Doc. 481 *with* Doc. 466).[2]

## DISCUSSION

### I. Legal Standard

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." When a defendant challenges the legality of their conviction under a statute, "there is no basis for collateral relief under § 2255 unless the claimed error constituted a fundamental defect which inherently results in a 'complete miscarriage of justice.'" *United States v. Wilcox*, 640 F.2d 970, 972–73 (9th Cir. 1981) (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). In other words, a defendant seeking relief under § 2255 on the basis that their conviction or sentence violated federal law must show both (1) that the law was violated, and (2) that the violation constituted a "complete miscarriage of justice." *See id.*

Under 28 U.S.C. § 455(a), "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[3]

---

[2] Though the second motion also raises a due process argument for Judge Kindred's recusal, statutes—such as 28 U.S.C. § 455—and professional codes of conduct "provide more protection than due process requires," such that constitutional due process issues "demark[] only the outer boundaries of judicial disqualifications." *Williams v. Pennsylvania*, 579 U.S. 1, 13 (2016) (first quoting *Caperton v. AT Massey Coal Co., Inc.*, 556 U.S. 868, 890 (2009); then quoting *Aetna Life Ins. Co v. Lavoie*, 475 U.S. 813, 828 (1986)). Because, as explained below, Defendant's arguments in his first Motion to Vacate fail to meet the lower, more defendant-protective standards of § 455, his arguments do not reach the "outer boundaries" of judicial disqualification that would constitute a due process violation. Thus, the Court only addresses Defendant's statutory arguments for recusal.

[3] The Code of Conduct for United States Judges uses similar language: "a judge must disqualify himself or herself in a proceeding where his or her impartiality could reasonably be questioned." *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1173–74 (9th Cir. 2017).

Assessment of a judge's impartiality under this standard must have an "objective basis," including "knowledge of all the facts." *United States v. Carey*, 929 F.3d 1092, 1104 (9th Cir. 2019) (first quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994); then quoting *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993)). The inquiry does not depend on "the reality of bias or prejudice but its appearance." *Id.* (quoting *Liteky*, 510 U.S. at 548). As such, "[d]isqualification under § 455(a) is necessarily fact-driven and may turn on subtleties in the particular case." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).

In all cases, "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). Yet "[t]he standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Holland*, 519 F.3d at 913 (citation omitted).

In this context, reasonableness is not based on the perception of "someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer." *Id.* (citation omitted). When judges consider whether recusal is necessary, they "must bear in mind that these outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be." *Id.* at 914 (quoting *In re Nettles*, 394 F.3d 1001, 1002 (7th Cir. 2005)).

When "applied retroactively," the provision is meant "to rectify an oversight and to take the steps necessary to maintain public confidence in the impartiality of the judiciary." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 861 (1988). If impartiality may reasonably be questioned, § 455(a) has been violated. *Id.*

**II.      Application**

Because a reasonable observer would not have questioned Judge Kindred's partiality in this case, Judge Kindred did not violate § 455 and Defendant's convictions and sentences cannot be vacated under § 2255. As discussed below, Defendant's Motion to Vacate (Doc. 466) is denied.

Overall, Defendant's arguments fail to sufficiently identify any risk of injustice suffered during the proceedings against him which would have required Judge Kindred to recuse himself. As an initial matter, Defendant's proceedings were not contemporaneous with most of Judge Kindred's documented misconduct, which seems to have begun in earnest in December 2021 before escalating in the following months. *See United States v. Spayd*, No. 3:19-cr-00111, 2025 WL 2825902, at *1–2 (D. Alaska Oct. 6, 2025); *United States v. Hernandez-Zamora*, No. 3:21-cr-00062, at 2 (D. Alaska Sept. 27, 2024), ECF No. 406 (filed Dec. 9, 2024). But even if Judge Kindred's misconduct began before Defendant's conviction, Defendant makes no connection between that misconduct and this case or any suggestion of partiality in it. For instance, most of the misconduct that Defendant describes in his Motion to Vacate involves two AUSAs who he does not claim had any involvement with his case.[4] (Doc. 466 at 2–7, 10). Though Defendant describes Judge Kindred's issues and his failure to supervise clerks in chambers, Defendant offers no reasonable explanation of how this conduct created bias—or the appearance of bias—that could have affected his trial or sentencing.[5] (*Id.* at 7; *see id.* at 9–12).

Similarly, Defendant's emphasis on the "rivalry" relationship between Judge Kindred and AUSA Alexander offers no support to his arguments or no suggestion that Judge Kindred was biased against him. Even if Judge Kindred had addressed his "rivalry" relationship with AUSA Alexander and claimed that AUSA Alexander was "jealous" of him (*id.* at 8) in open court during Defendant's trial, a prior professional, or even personal relationship does not mandate recusal, absent any showing that such statements resulted in

---

[4] Defendant claims that one of these AUSAs was the direct supervisor over AUSAs Ivers and Alexander, who prosecuted Defendant. (Doc. 466 at 5). Not so. (Doc. 474 at 11); Exhibit E, Notice of Filing Response in Opposition to Defense Motion for New Trial at 2, *United States v. Spayd*, No. 3:19-cr-00111 (D. Alaska June 6, 2025), ECF No. 469-8 (exhibit showing email announcing Vandergaw's appointment to serve as acting senior litigation council in September of 2023, long after Defendant's conviction).
[5] Further, Defendant's suggestion that Judge Kindred's sexual relationships with these AUSAs and other misconduct mirrored Defendant's own criminal conduct is unconvincing. (Doc. 466 at 5 n.3). While Judge Kindred's behavior was certainly reprehensible, Defendant overlooks the disparity between his own conduct—which included sex trafficking of a minor and sex trafficking by force, fraud, or coercion—and Kindred's. He again, offers no reasonable explanation of how Kindred's misconduct affected his case or the appearance of Kindred's impartiality.

a particular risk of injustice to a defendant. *Cf. United States v. Bosch*, 951 F.2d 1546, 1548–49 (9th Cir. 1991) (applying § 455 on direct appeal and finding that a judge's comments during trial regarding his positive personal and professional relationship with the prosecutor did not provide grounds to overturn defendant's conviction because defendant failed to demonstrate "any prejudice, let alone a miscarriage of justice" (quotation marks omitted)). Defendant makes no showing that Judge Kindred and AUSA Alexander's relationship resulted in a particular risk of injustice in his case, as required by § 455, or in a "miscarriage of justice," as required by § 2255.

Defendant further suggests that Judge Kindred demonstrated bias against AUSA Alexander by claiming that AUSA Alexander was responsible for other AUSAs "fishing around" in Judge Kindred's life for misconduct. (Doc. 466 at 9). This statement, however, was made in October of 2022 (*id.* at 8–9), over a year after Defendant was convicted (Doc. 451 at 1), thus providing little insight into the relationship between Judge Kindred and AUSA Alexander during Defendant's trial. Moreover, Defendant again fails to make any argument as to how this relationship impermissibly risked Judge Kindred's partiality against Defendant.

As such, Defendant's arguments that his conviction must be vacated rest entirely upon a general concern that Judge Kindred's misconduct outside of the proceedings against Defendant created a risk of partiality that would necessitate Judge Kindred's recusal or a miscarriage of justice that would require this Court to vacate his conviction. (*See* Doc. 466 at 9–12). Though judicial impropriety may inform judicial bias, *cf. Greenway v. Schriro*, 653 F.3d 790, 806 (9th Cir. 2011) (discussing judicial bias in the context of due process violations), impropriety alone—particularly without some effect on the proceedings at issue—will not require recusal under § 455. *See Holland*, 519 F.3d at 913 (noting that § 455 analysis requires "an independent examination of the unique facts and circumstances of the particular claim at issue" (citation omitted)); *Liljeberg*, 486 U.S. at 861 (holding that the "the risk of injustice to the parties in the particular case" is an important consideration when determining whether to vacate a conviction or sentence for failure to recuse).

Because Defendant has failed to sufficiently allege any violation of § 455, and therefore, cannot fulfill the requirements for relief under § 2255, his Motion to Vacate (Doc. 466) is denied. As unnecessary and duplicative of his already pending Motion to Vacate (*see supra* note 3), Defendant's subsequent Motion to Vacate (Doc. 481) is also denied.

## CONCLUSION

Because no good cause remains for discovery, Defendant's Motion to Compel Discovery (Doc. 469) is also denied. R. Governing § 2255 Proceedings 6(a). Defendant's Unopposed Motion to Permit Time for Investigation (Doc. 484) is similarly denied.

This case is transferred back to the Honorable Sharon Gleason to facilitate timely resentencing.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Vacate (Doc. 466) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel Discovery (Doc. 469) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Vacate (Doc. 481) is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Unopposed Motion to Supplement Response to Motion to Vacate (Doc. 483) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Unopposed Motion to Permit Time for Investigation (Doc. 484) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is transferred back to the Honorable Sharon Gleason to facilitate timely resentencing as ordered by the Court of Appeals (Docs. 451, 453).

Dated this 23rd day of January, 2026.

_____
G. Murray Snow
Senior United States District Judge